UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIELLE F. HERMAN,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br><br>    Defendant. | Case No.  15-cv-03333-DMR<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 21 |

Plaintiff Danielle F. Herman moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Plaintiff not disabled and therefore denied her application for benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*.  The Commissioner opposes Plaintiff's motion and moves to affirm.  For the reasons stated below, the court **denies Plaintiff's motion.**

## I. PROCEDURAL HISTORY

Plaintiff filed an application for supplemental security income on December 14, 2011, alleging a disability onset date of November 15, 2005.  Administrative Record ("AR") 197-206.

Her application was initially denied on April 12, 2012 and upon reconsideration on January 2, 2013.  AR 87-100, 128-133.  Following the denial on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 134-36.  Prior to the case being heard by the ALJ, Plaintiff amended her disability onset date to December 14, 2011.  AR 315.

Plaintiff appeared and testified at a hearing before Administrative Law Judge Maxine R. Benmour on November 21, 2013.  AR 33-86.  After the hearing, the ALJ issued a decision finding Plaintiff not disabled.  AR 17-32.  The ALJ determined that Plaintiff has the following severe impairments: multiple sclerosis, morbid obesity, a mild cognitive disorder, and an affective

disorder. AR 22. She also concluded that Plaintiff's initial allegations of "severe, extreme, and unrelenting fatigue; clinical depression; tremors; an interim visual impairment, and muscle weakness" were severe impairments or symptoms of multiple sclerosis. AR 22. The ALJ found that the record contained evidence of fatigue, that the tremors did not appear to be a reported symptom, and that visual acuity and muscle weakness appeared to be "intermittent symptoms with no actual probative evidence of durational limitations." AR 22. The ALJ found that "[i]mpairments such as eczema, anemia, cellulitis, migraines, and possibly others" were non-severe. AR 22. The ALJ found that Plaintiff had the following residual functional capacity ("RFC"):

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 416.967(a), except that she can lift and/or carry twenty pounds occasionally and ten pounds frequently, sit for six hours in an eight-hour day, and stand or walk for two hours in an eight-hour day. She can occasionally climb, balance, stoop, kneel, crouch, and crawl. She can frequently reach, handle, finger, and feel with the right upper extremity. She must avoid concentrated exposure to extreme cold and heat and fumes, odors, dusts, gases, and poor ventilation. The claimant must avoid all exposure to hazards. She retains the abilities to engage in simple, repetitive tasks.

AR 26. Relying on the opinion of a vocational expert ("VE") who testified that an individual with such an RFC could perform jobs existing in the economy, including parking lot cashier, lens inspector, and production inspector, the ALJ concluded that Plaintiff is not disabled. AR 31. The Appeals Council denied Plaintiff's request for review on May 18, 2015. AR 1-6. The ALJ's decision therefore became the Commissioner's final decision. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). Plaintiff then filed suit in this court pursuant to 42 U.S.C. § 405(g).

## II. THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:

1. At the first step, the ALJ considers the claimant's work activity, if any. If the claimant is doing substantial gainful activity, the ALJ will find that the claimant is not disabled.

2. At the second step, the ALJ considers the medical severity of the claimant's impairment(s). If the claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 416.909, or a combination of impairments that is severe and meets the duration requirement, the ALJ will find that the claimant is not disabled.

3. At the third step, the ALJ also considers the medical severity of the claimant's impairment(s). If the claimant has an impairment(s) that meets or equals one of the listings in 20 C.F.R., Pt. 404, Subpt. P, App. 1 [the "Listings"] and meets the duration requirement, the ALJ will find that the claimant is disabled.

4. At the fourth step, the ALJ considers an assessment of the claimant's residual functional capacity ("RFC") and the claimant's past relevant work. If the claimant can still do his or her past relevant work, the ALJ will find that the claimant is not disabled.

5. At the fifth and last step, the ALJ considers the assessment of the claimant's RFC and age, education, and work experience to see if the claimant can make an adjustment to other work. If the claimant can make an adjustment to other work, the ALJ will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, the ALJ will find that the claimant is disabled.

20 C.F.R. § 416.920(a)(4); 20 C.F.R. §§ 404.1520; *Tackett*, 180 F.3d at 1098-99.

III.  **FACTUAL BACKGROUND**

**A. Plaintiff's Testimony and Relevant Evidence from the Record**

The record contains the following information. Plaintiff was born on May 15, 1979 and

1  has a bachelor's degree. AR 39. Plaintiff took eight years to complete her degree due to fatigue
2  and cognitive issues, which caused her to take some time away from school. AR 41. Plaintiff
3  worked as a retail stock clerk for two months in 2000, and worked in an unpaid position with a
4  friend at his start-up business helping to build a website in 2004. AR 44. She testified that she
5  could not continue to work with her friend due to lack of energy and trouble focusing. AR 44-45.
6  Plaintiff is right-handed, and she has trouble writing if she is tired or fatigued. AR 45, 63.
7  Plaintiff has been dealing with depression since 1998. AR 56. She takes Wellbutrin which helps a
8  little with her anxiety and depression. AR 55-56. Plaintiff stated that she "developed extreme
9  fatigue" in 1999. AR 64. She was diagnosed with relapsing-remitting multiple sclerosis ("MS")
10 in November 2004. AR 388. Plaintiff had previously used a cane to help with muscle weakness,
11 but had not used it in the three years prior to the hearing. AR 66.

12     Plaintiff testified that she had been living with her mother for the past year, which helped
13 with her fatigue because her mother cooks and does other things to help Plaintiff maintain herself.
14 AR 57. Plaintiff stated that she "pretty much always feel[s] tired," and that after being up for four
15 hours she is ready for a nap. AR 57. She usually takes a two-hour nap in the early afternoon
16 every day. AR 57-58.

17     Plaintiff testified that she can walk for about fifteen minutes, sit for a couple of hours,
18 stand for ten minutes, and lift between ten and twenty pounds. AR 67-69. Plaintiff is able to
19 shower and dress herself. AR 69-70. She can also assist with household chores including
20 vacuuming, feeding the dog, and doing laundry. AR 70-71.

21     During a typical day, Plaintiff gets up, has coffee and breakfast, watches the news for a
22 couple hours, goes online to read news or other items for a couple hours, does a household task
23 like watering the plants, and takes a two-hour nap. AR 57-58, 71-72.

24     **B.**    **Relevant Medical Evidence**
25         **1.**    **Jeffery English, M.D.**

26 Plaintiff participated in a three-year clinical study with specialized MS medicines at the
27 Multiple Sclerosis Center of Atlanta. AR 353-79, 465. The record contains history and physical
28 reports from the Multiple Sclerosis Center of Atlanta dated from July 12, 2005 to July 1, 2009.

AR 353-79. Dr. English did not provide a medical opinion about whether Plaintiff was disabled or unable to work due to her condition.

### 2.  Navjeet Boparai, M.D.

In March 2012, Dr. Boparai consultatively examined Plaintiff and conducted a comprehensive neurological evaluation. AR 388-93. Dr. Boparai diagnosed Plaintiff with MS with associated fatigue, visual impairments, and mild cognitive impairments, as well as depression. AR 391. He opined that Plaintiff could stand or walk up to two hours, sit for up to four hours, and lift of carry twenty pounds occasionally and ten pounds frequently. AR 391. Dr. Boparai determined that Plaintiff had occasional postural limitations, and needed a cane for long distances and uneven terrain, that she had no manipulative limitations for her left hand, but did for her right hand, and that she should not work at heights, around heavy machinery, extremes of temperatures, chemicals, dust, fumes or gases. AR 391-92.

### 3.  Georgina Samuel, Physician's Assistant

In April 2012, Plaintiff established care at Clinic Ole. In April and July 2012, Georgina Samuel, a physician's assistant, assessed Plaintiff for depression, MS, morbid obesity, elevated blood pressure, and eczema. AR 406-420.

### 4.  C. Gregory Culberson, M.D.

In June 2012, Dr. Culberson performed a neurologic evaluation of Plaintiff for MS. AR 403-05. He reviewed Plaintiff's available medical records and found that "[h]er history, available records, and nueroimaging results certainly support a presumptive diagnosis of M.S., with relapsing-remitting course over a 10-14 year interval and at least nearly-normal neurologic exam now." AR 404. He went on to conclude that she "has fared very well, including over the last 3 years, during which she has been untreated with immunomodulators." AR 404. Dr. Culberson provided recommendations for treatment and planned to see Plaintiff again in two to three months. AR 405. Plaintiff saw Dr. Culberson for treatment twice, once at the end of 2011 and once in June 2012. AR 49.

### 5.  Robert A. Egan, M.D.

In September 2012, Dr. Egan saw Plaintiff for a neurologic consultation. AR 465. At the

time, Plaintiff was not receiving any treatment and had not had any recent imaging. AR 465. Dr. Egan found that Plaintiff was alert and oriented, had no abnormalities in speech, normal muscle bulk and tone, "strength was 5/5 throughout," fine motor movements were normal, no pronator drift, verbal memory recall was normal, no dysmetria, normal deep tendon reflexes, "gait testing was normal without posturing," and that sensation testing for pain and vibration was appropriate for her age. AR 465. He noted that Plaintiff's "fatigue may actually be depression fatigue and not MS fatigue." AR 466. Dr. Egan noted that Plaintiff was "trying to get disability for fatigue," and opined that Plaintiff was not disabled. AR 465-66.

In December 2012, Dr. Egan wrote that an MRI confirmed Plaintiff's MS diagnosis. AR 463. Dr. Egan noted that if he were in Plaintiff's position, he would choose to be treated for MS, and he discussed medication with Plaintiff. AR 463-64. He started her on Copaxone. AR 464.

### 6. Emmanuelle L. Waubant, M.D.

Dr. Waubant saw Plaintiff at the UCSF Multiple Sclerosis Center for treatment in July and September 2013. AR 444-459. She stated that based on Plaintiff's MRI scans and symptoms, the most likely diagnosis was relapsing-remitting MS. AR 453. In July 2013, Dr. Waubant's impression was that "[a]lthough [Plaintiff] may not have had clear cut exacerbations in the past three years off medication for MS, she has substantial difficulties related to MS including cognitive problems and severe fatigue." AR 453. She discussed several treatment options with Plaintiff, including three medications: Tysabri, Gilenya, or Tecfidera. She specifically recommended Tysabri "due to its benefit on chronic fatigue." AR 453-54.

In September 2013, Dr. Waubant reported that Plaintiff stated that she was "stable in terms of MS," she had stopped taking Cymbalta one month prior due to concerns about side effects, and she had experienced "worsening of anxiety since then and mild depression." AR 445. Dr. Waubant also stated that Plaintiff "continues to report severe fatigue." AR 445. Dr. Waubant recommended initiating Tysabri for her MS and to resume treatment with Cymbalta to help with anxiety. AR 446. At the hearing before the ALJ, Plaintiff testified that she has not yet tried any new medication. AR 28. Plaintiff testified that she did not try Tysabri because she tested positive for the JC virus, which increases the risk of treatment with Tysabri, and a potential side effect is

death. AR 48. Plaintiff testified that she had seen Dr. Waubant twice, and that Dr. Waubant was her treating doctor. AR 49, 51.

## IV. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## V. ISSUES PRESENTED
1. Whether the ALJ erred in weighing Plaintiff's credibility.
2. Whether the ALJ erred in weighing Plaintiff's mother's and friend's reports.
3. Whether the ALJ erred in evaluating Listing 12.04 (Affective Disorders).
4. Whether the ALJ erred in weighing the medical evidence.
5. Whether the ALJ considered Plaintiff's symptoms when relapsing in formulating the RFC.
6. Whether the ALJ erred in eliciting and relying on the vocational expert's testimony.

## VI. DISCUSSION

### A. The ALJ's Credibility Determination

Plaintiff challenges the ALJ's finding that her statements concerning the intensity,

persistence, and limiting effects of her symptoms were "not entirely credible." AR 27.

### 1. Legal Standard

In general, credibility determinations are the province of the ALJ. "It is the ALJ's role to resolve evidentiary conflicts. If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984) (citations omitted). An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (citing 42 U.S.C. § 423(d)(5)(A)). Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). If an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "must specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Id*. at 972 (quotations omitted); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (ALJ must articulate reasons that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281 (citations omitted). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345

1  (9th Cir. 1991) (en banc) (citation omitted).  Absent affirmative evidence that the claimant is
2  malingering,[2] the ALJ must provide specific "clear and convincing" reasons for rejecting the
3  claimant's testimony.  *Smolen*, 80 F.3d at 1283-84.

### 2. Analysis

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  AR 27.  Since there was no evidence that Plaintiff was malingering, the ALJ was required to provide specific "clear and convincing" reasons for rejecting her testimony.  *Smolen*, 80 F.3d at 1283-84.

The ALJ noted that Plaintiff "testified to very limited functional abilities and daily naps as a result of her fatigue," and that her "mother's testimony was consistent with the limitations reported by the claimant."  However, the ALJ found that the medical opinions in the record did not support the level of limited functionality to which Plaintiff testified.  AR 30.

Plaintiff contends that the ALJ failed to specifically point to the evidence that did and did not support her credibility.  MSJ at 6.  Plaintiff contends that her testimony was supported by the reported observations of her mother as well as her family friend, Ms. Eizenberg.

The ALJ provided three reasons for not finding Plaintiff's testimony credible: 1) no treating or examining doctor indicated that Plaintiff was unable to perform any level of work due to MS or depression, and one doctor affirmatively found that Plaintiff was not disabled; 2) at least one neurologist believed that her fatigue was due to depression rather than to MS; and 3) no treating doctor indicated that Plaintiff was disabled as a result of depression.  AR 29-30.

The court finds that the ALJ provided clear and convincing reasons supported by substantial evidence for her decision.  Although particular evidence is susceptible to an interpretation more favorable to Plaintiff, the ALJ's interpretation was rational; a court must "uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."  *See Burch v. Barnhart*, 400 F.3d 676, 680-81 (quoting *Magallanes v. Bowen*, 881

---

[2] The ALJ did not conclude that Plaintiff was a malingerer.

F.2d 747, 750 (9th Cir. 1989)) (quotation marks omitted).

The ALJ found that the medical evidence of record did not support the degree of disability alleged by Plaintiff. The objective medical evidence, or lack thereof, is an important factor to consider in determining a claimant's credibility. *See* 20 C.F.R. 416.929(c)(2) (objective medical evidence is a useful indicator in making reasonable conclusions about the intensity and persistence of a claimant's symptoms and the effect those symptoms may have on a claimant's ability to work). The ALJ explained that the medical opinion of neurologist Dr. Egan undermined Plaintiff's complaints of disabling fatigue and multiple sclerosis symptoms. AR 28. The ALJ noted that Dr. Egan opined that Plaintiff's complaints of fatigue might be the result of depression, as opposed to multiple sclerosis, and that neither the depression nor multiple sclerosis caused disabling functional limitations. AR 28, AR 466 ("She is asking for disability, but she is not disabled.").

The ALJ also referenced evidence from Plaintiff's treating physicians that suggested that the Plaintiff was not severely limited in her functional abilities. AR 29, 30. Treating neurologist Dr. Culberson observed that Plaintiff had "fared very well" even without drug treatment for her MS for a three-year period. AR 28, 404. Plaintiff's June 2012 neurological examination was "nearly-normal." AR 30, 404. Plaintiff's motor exam revealed "normal muscle bulk, tone and strength in all 4 extremities and the head and neck" and also revealed a normal gait. AR 404. Dr. Culberson described Plaintiff as "an intelligent, coherent historian, with a sense of humor and no overt depression or other disorder of affect or thought." AR 404.

The ALJ also noted that the Dr. Waubant "found claimant to have a basically normal neurological examination with the claimant's main reported symptom of fatigue." AR 30 (citing AR 452). The ALJ incorporated Dr. Waubant's finding that Plaintiff had MS-related cognitive problems in her limitation to simple, repetitive tasks. The ALJ noted that while Dr. Waubant indicated that Plaintiff suffered from severe fatigue when she was not taking medicine, she did not indicate that the Plaintiff could not work as a result of her MS. AR 30 (citing AR 457). Dr. Waubant also indicated that one of the drug treatments that she counseled Plaintiff on had "benefit on chronic fatigue." AR 458. The ALJ noted that Dr. Waubant did not find that Plaintiff was

unable to work due to her condition, and that "[i]n fact, no treating or examining doctor has indicated that claimant is unable to perform any level of work due to multiple sclerosis or depression." AR 30.

Lack of corroborating medical evidence, however, is not by itself a clear and convincing reason to reject a claimant's credibility when the claimant provides objective medical evidence of the underlying impairment, as Plaintiff did in this case. *Bunnell v. Sullivan*, 947 F.2d 341, 347–48 (9th Cir. 1991); *see also Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989) (the claimant need only show that her impairment could reasonably have caused some degree of the symptoms alleged). However, Dr. Egan, Plaintiff's treating neurologist evaluated Plaintiff's reports that she could not work due to her fatigue and opined that she was "not disabled." He recommended that Plaintiff exercise more and stated that he would discuss therapy with Plaintiff when she returned for her follow-up. AR 465-66.

The ALJ considered Plaintiff's testimony regarding her "very limited functional abilities and daily naps as a result of her fatigue," noting that her mother's testimony was consistent with Plaintiff's reported limitations. AR 30. After reviewing the neurologists' evaluations, the ALJ considered whether Plaintiff's reported fatigue could be due to depression, rather than to MS. AR 30. The ALJ noted that Plaintiff testified that she has been depressed since 1998, and that she has suffered from fatigue since 1998, the same time her depression started. AR 30. The ALJ also observed that Plaintiff's mother stated that claimant had suffered from "a great deal of depression." AR 30. The ALJ noted that Plaintiff had received treatment for depression, including Wellbutrin, Cymbalta, and Prozac, and that the first two drugs helped Plaintiff. AR 30. The ALJ went on to find that the evidence in the record did not support a finding of disabling depression and that "[n]o treating doctor has indicated that claimant is disabled as a result of depression." AR 30.

The court concludes that the ALJ did provide specific, clear and convincing reasons for rejecting Plaintiff's testimony and evidence regarding the severity of her impairments, including her fatigue. The ALJ pointed to the results of neurological evaluations that were nearly normal; considered Plaintiff's complaints of fatigue both as a symptom of her MS and as a symptom of her

11

depression; and noted that no treating or examining doctors indicated that Plaintiff was unable to perform any level of work due to MS or depression.

### B. Whether the ALJ Erred in Considering Plaintiff's Mother's or Ms. Eizenberg's Reports

Plaintiff contends that the ALJ erred in weighing the lay testimony of Plaintiff's mother, Rosita Thornton, and Plaintiff's family friend, Melissa Eizenberg. MSJ at 6-8.

#### 1. Legal Standard

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (citations and quotation marks omitted). Ordinarily, an ALJ must provide specific reasons, "germane to each witness," to reject the testimony of a lay witness. *Id.* (citations and quotation marks omitted). "Inconsistency with medical evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (citation omitted).

#### 2. Analysis

In her report the ALJ noted that Plaintiff's mother, Rosita Thornton, wrote that the Plaintiff seemed fatigued constantly, her problems with vision and concentration were slight to severe, and her muscle control varies from moderate to severe. AR 27 (citing AR 232). The ALJ also noted that according to the report of Plaintiff's close family friend, Melissa Eizenberg, who visits Plaintiff and her mother about once a month, Plaintiff experiences extreme fatigue. AR 27 (citing AR 298). The ALJ concluded that her decision was "not inconsistent with the reported observations of the claimant's mother and friends." AR 27.

ALJ adequately considered and addressed Plaintiff's own allegations of her symptoms. Plaintiff concedes that under Ninth Circuit precedent, if the ALJ properly finds the claimant to not be fully credible, then she may also reject lay witness accounts duplicative of the Plaintiff's testimony. Reply at 2 (discussing *Molina v. Astrue*, 674 F.3d 1104, 113 (9th Cir. 2012)). Thus, although the ALJ did not state specific reasons for rejecting the mother's and Ms. Eizenberg's testimony, she effectively did so when she rejected Plaintiff's testimony. Because the mother's and Ms. Eizenberg's testimony and reports are duplicative of that evidence, no reasonable ALJ

would have reached a different conclusion about Plaintiff's disability status by evaluating the mother's and Ms. Eizenberg's testimony and reports. *See Zerba v. Comm'r of Soc. Sec. Admin.*, 279 F. App'x 438, 440 (9th Cir. 2008) ("Because her husband's testimony was substantially similar to Zerba's own properly discredited testimony, we conclude that no reasonable ALJ could have reached a different result, and any error was harmless.").

### C. Whether the ALJ Erred in Evaluating Listing 12.04 (Affective Disorders)

Plaintiff contends that the ALJ erred in her analysis of the severity of the Plaintiff's depression in evaluating her under Listing 12.04. MSJ at 8. Plaintiff argues that her own testimony, as well as her mother's and Ms. Eizenberg's supported a finding that she had "marked" limitations of activities of daily living and "moderate" limitations with respect to social functioning. MSJ at 8-9.

#### 1. Legal Standard

A Listing 12.04 affective disorder is "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." 20 C.F.R. Pt. 404, Subpt. P., App. 1 at 12.04. The required level of severity for these disorders is met when the requirements in both paragraphs A and B of 12.04, or the criteria set forth in paragraph C, are satisfied.[3]

---

[3] Listing 12.04 provides:
*Affective Disorders:* Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
A. Medically documented persistence, either continuous or intermittent, of one of the following:
    1. Depressive syndrome characterized by at least four of the following:
        a. Anhedonia or pervasive loss of interest in almost all activities; or
        b. Appetite disturbance with change in weight; or
        c. Sleep disturbance; or
        d. Psychomotor agitation or retardation; or
        e. Decreased energy; or
        f. Feelings of guilt or worthlessness; or
        g. Difficulty concentrating or thinking; or
        h. Thoughts of suicide; or
        i. Hallucinations, delusions, or paranoid thinking; or
    2. Manic syndrome characterized by at least three of the following:
        a. Hyperactivity; or
        b. Pressure of speech; or
        c. Flight of ideas; or
        d. Inflated self-esteem; or

### 2. Analysis

Plaintiff concedes "that the elements needed to support Paragraph 12.04 A are difficult to identify in the record," but argues that there is evidence in the record that, if the ALJ properly weighed Plaintiff's testimony, the ALJ would have found that Plaintiff met the requirements of paragraph B. Reply at 2. However, to have an affective disorder that qualifies as disabling under Listing 12.04 at step three of the analysis, Plaintiff must meet the requirements of both paragraphs A and B. Plaintiff has put forth no evidence that she meets the criteria of paragraph A of 12.04. Her contention that she meets the criteria of paragraph B thus would not entitle her to a finding of disability for Listing 12.04. Further, the ALJ found, and Plaintiff does not dispute, that Plaintiff did not satisfy the paragraph C criteria. AR 25.

### D. Whether the ALJ Erred in Weighing the Medical Opinions

The Plaintiff contends that in formulating Plaintiff's RFC, the ALJ erred in weighing the medical opinions and did not properly account for the severity of Plaintiff's fatigue.

### 1. Legal Standard

Courts employ a hierarchy of deference to medical opinions based on the relation of the

---

    e. Decreased need for sleep; or
    f. Easy distractability; or
    g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
    h. Hallucinations, delusions or paranoid thinking; or
3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);
**AND**
B. Resulting in at least two of the following:
    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration;
**OR**
C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
    1. Repeated episodes of decompensation, each of extended duration; or
    2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
    3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.
20 C.F.R. Pt. 404, Subpt. P., App. 1 at 12.04 (emphasis added).

doctor to the patient. Namely, courts distinguish between three types of physicians: those who treat the claimant ("treating physicians"), and two categories of "nontreating physicians," those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("non-examining physicians"). *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining physician's opinion. *Id.*

The Social Security Act tasks the ALJ with determining credibility of medical testimony and resolving conflicting evidence and ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). A treating physician's opinion, while entitled to more weight, is not necessarily conclusive. *Magallanes*, 881 F.2d at 751 (9th Cir. 1989) (citation omitted). To reject the opinion of an uncontradicted treating physician, an ALJ must provide "clear and convincing reasons." *Lester*, 81 F.3d at 830; *see, e.g.*, *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (affirming rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *see also* 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188. If another doctor contradicts a treating physician, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence to discount the treating physician's opinion. *Lester*, 81 F.3d at 830. The ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725 (citation omitted). "[B]road and vague" reasons do not suffice. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). This same standard applies to the rejection of an examining physician's opinion as well. *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion alone cannot constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), though a non-examining physician's opinion may be persuasive when supported by other factors. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that opinion by "non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the

record"); *Magallanes*, 881 F.2d at 751-55 (upholding rejection of treating physician's opinion given contradictory laboratory test results, reports from examining physicians, and testimony from claimant). An opinion that is more consistent with the record as a whole generally carries more persuasiveness. *See* 20 C.F.R. § 416.927(c)(4).

### 2. Analysis

Plaintiff relies on three statements from medical records that note her fatigue or opine that Plaintiff has limitations due to her fatigue. Two are from treating physicians English and Waubant, and one is from examining physician Boparai. MSJ at 9-10.

Plaintiff first asserts that in December 2007, her treating physician Dr. English noted that Plaintiff's "[f]atigue and fatigue-able weakness is most disabling." AR 360. The ALJ does not specifically address Dr. English's treatment note in her opinion. However, the statement in Dr. English's note is not clearly a medical opinion that Plaintiff was unable to work due to her medical conditions; it could simply mean that of all of Plaintiff's symptoms, the fatigue was the most prominent. Dr. English does not opine in the cited portion of the record that Plaintiff was disabled or otherwise unable to work or engage in activities of daily living. Furthermore, his treatment note is approximately four years before Plaintiff's alleged disability onset date of December 14, 2011.

In March 2012, Dr. Boparai consultatively examined Plaintiff and noted that her "most prominent problem" due to MS was fatigue. AR 388. Dr. Boparai further opined that due to her fatigue, Plaintiff could stand or walk for up to two hours and sit for up to four hours. AR 391. The ALJ gave reduced weight to Dr. Boparai's opinion that the Plaintiff could only sit for four hours due to fatigue because Dr. Boparai did not review any records, and thus was not aware that Plaintiff's treating neurologist had opined that she was not disabled. AR 27 (citing AR 318-19). The ALJ also gave Dr. Boparai's opinion reduced weight because he opined that the Plaintiff needed a single point cane for long distances and uneven terrain, but Plaintiff had not needed to use a cane for three years. AR 27. The ALJ gave weight to Dr. Boparai's findings from his physical examination of Plaintiff, including his finding that Plaintiff had reduced right hand grip strength, and accordingly limited the Plaintiff to frequent use of her right hand and arm. AR 27.

The ALJ provided postural limitations and restrictions on work around hazards based on Plaintiff's fatigue. AR 27.

In September 2013, Dr. Waubant, who was treating Plaintiff at the UCSF Medical Center, noted that the Plaintiff was "stable in terms of MS," that she stopped taking Cymbalta one month prior due to concern about side effects, and that she had experienced "worsening of anxiety since then and mild depression. She continues to report severe fatigue." AR 445. Dr. Waubant's note states that Plaintiff reported severe fatigue, but does not opine on any limitations due to the fatigue, including limitations on Plaintiff's ability to work or complete activities of daily living.

The ALJ considered Plaintiff's complaints of fatigue and discussed fatigue throughout her opinion, as discussed above in section A. In developing Plaintiff's RFC, the ALJ discussed the findings of Drs. Culberson and Egan, both treating neurologists, and Dr. Pong, the State agency consultant. AR 28-29. As explained above, Dr. Culberson reported that Plaintiff's June 2012 neurological examination was "nearly-normal" and described Plaintiff as "an intelligent, coherent historian, with a sense of humor and no overt depression or other disorder of affect or thought." AR 404.

In September 2012, Dr. Egan reported normal memory, speech, muscle strength, fine motor movements, and gait, and opined that although Plaintiff was seeking disability, she was "not disabled." AR 465-66.

In conclusion, the ALJ relied on substantial evidence, specifically the opinions of treating doctors Culberson and Egan and the conclusion of the state consultant Dr. Pong, in formulating the RFC and considering Plaintiff's reported fatigue.

### E. Whether the ALJ Erred in Formulating Plaintiff's RFC by Not Properly Accounting For Relapse of MS Symptoms

Plaintiff contends that in formulating Plaintiff's RFC, the ALJ did not account for Plaintiff's relapsing MS symptoms. MSJ at 11-12. However, Plaintiff does not point to any record medical evidence opining on her ability to work during a relapse, or analysis of her symptoms during a relapse, or the severity or frequency of her relapses. She cites only one case, *Lebus v. Harris*, 526 F. Supp. 56 (N.D. Cal. 1981), which considered whether the claimant was

disabled, despite symptom-free intervals due to his mental illness. The court remanded the case to the ALJ to consider new evidence submitted by the claimant after the Secretary's decision regarding his subsequent hospitalization and an updated report on his condition. *Id.* at 62. Here, Plaintiff has provided no additional record evidence regarding relapses.

The record reflects that Plaintiff's doctors believed that she had four MS relapses as of January 2006; the record also reflects a relapse in April 2007 (treated with three days of medication); one in 2008 (a four day relapse that went away without treatment, characterized by Dr. English as a "non protocol defined relapse"); and one in 2009 (after discontinuing medication). AR 27, 353, 358, 361, 365, 403. During these relapses, Plaintiff experienced decreased dexterity, weakness, and/or numbness in her extremities. AR 358. However, as explained above, Plaintiff does not cite to any medical opinion about her ability to work during these periods of relapse, the impact or severity of her symptoms during a relapse, or the frequency of relapse. Plaintiff does not cite to any specific periods of relapse in her brief. The Commissioner's last cited relapse in the medical record is in 2009. Opp'n at 14. Plaintiff fails to address this in her reply. Reply at 3-4. Furthermore, Plaintiff has not pointed to any indication that her relapses had any lingering limitations, or continued to occur during her claimed disability period.

The ALJ relied on evidence from 2012 indicating nearly normal neurological and motor functioning, despite Plaintiff not having received medical treatment for her MS for the preceding three years. AR 28, 404, 465. The ALJ also noted that no treating or examining doctor indicated that the Plaintiff was unable to perform any level of work due to her MS or depression. AR 30. Furthermore, the ALJ's RFC included limitations to sedentary work and included lifting, postural, standing and walking, reaching, and manipulative limitations, as well as limitations to extreme temperatures, fumes, odors, dusts, gases, poor ventilation or any hazards. AR 26.

In light of the record, the court finds that the ALJ's determination of the Plaintiff's RFC was supported by substantial evidence in the record.

### F. Whether the ALJ Erred in Eliciting and Relying on the Vocational Expert Testimony

At the hearing, the ALJ asked the VE whether a person of Plaintiff's age, education, and

work background, limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently, sitting six hours in an eight hour day, standing and walking for two hours a day, occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and avoiding exposure to hazards, extreme temperatures, fumes, odors, dusts, gases, and poor ventilation, and limited to simple repetitive tasks, would be able to perform jobs in the regional and national economy. AR 74. The VE identified the jobs of parking lot cashier, lens inserter, and production inspector. AR 74-75.

When the ALJ added the limitations of frequent reaching, handling, fingering, and feeling with the dominant right upper extremity, the VE testified that such a person would still be able to perform the identified jobs. AR 76.

When the ALJ posed the same hypothetical, but included the limitation that the person would have to lie down during the workday for about two hours, the VE testified that there would be no jobs that such a person could do. AR 76. When questioned by Plaintiff's attorney, the VE testified that an individual who had to lie down during the workday for one hour, would also not be able to work. AR 77.

When Plaintiff's attorney asked the VE whether a person could do the three identified jobs with an additional limitation of only occasional reaching, handling, fingering for the dominate right extremity, the VE testified that such a person would not be able to perform the three identified jobs and that the VE could not identify other jobs that such a person could perform with those limitations because the majority of sedentary, simple, repetitive, unskilled work involves frequent use of the upper extremities in reaching, handling, and fingering. AR 76-77.

Plaintiff contends that the ALJ erred in finding her not disabled because the ALJ did not adequately account for Plaintiff's fatigue or symptoms of relapse in the hypotheticals posed to the VE, and when those limitations were included, the VE testified that there were no jobs that such a person could perform. Plaintiff's argument that the ALJ's hypotheticals to the VE were incomplete is merely a restatement of her argument that the ALJ improperly discounted her testimony regarding her fatigue and did not take into account the relapse of her symptoms. Those arguments have been addressed above. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th

19

1 Cir. 2008) (rejecting claimant's argument that ALJ's hypothetical to VE was incomplete, where the argument was simply a restatement of her unsuccessful argument that the ALJ's RFC did not account for all of her limitations).

### VII. CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision was supported by substantial evidence in the record and affirms.

**IT IS SO ORDERED.**

Dated: September 14, 2016



_____
Donna M. Ryu
United States Magistrate Judge